3.18 mj 1357 (SALM)
3.18 mj 1358 (SALM)
3.18 mj 1359 (SALM)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

IN THE MATTER OF THE SEARCH OF
INFORMATION ASSOCIATED WITH
ACCOUNTS THAT ARE STORED AT
PREMISES CONTROLLED BY GOOGLE
LLC, FACEBOOK, AND INSTAGRAM

Case No.

**Filed Under Seal**

2018 AUG 23  A 10: 51
U.S. DISTRICT COURT
NEW HAVEN CT

### AFFIDAVIT IN SUPPORT OF
### APPLICATION FOR SEARCH WARRANTS

I, Kyle Bombace, a Task Force Officer with the Federal Bureau of Investigation (FBI)

Violent Crime Task Force, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for search warrants for

information associated with certain accounts that are stored at premises controlled by Google

LLC ("Google"), an email provider headquartered in Mountain View, California; Facebook, a

social networking company headquartered in Menlo Park, California; and Instagram, a social

networking company owned by Facebook that is headquartered in San Francisco, California

(collectively, the "Providers").  The information to be searched is described in the following

paragraphs and in three Attachments A (one for each company).  This affidavit is made in

support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and

2703(c)(1)(A) to require the Providers to disclose to the government copies of the information

(including the content of communications) further described in Section I of the three

Attachments B.  Upon receipt of the information described in Section I of the three Attachments

B, government-authorized persons will review that information to locate the items described in

Section II of the three Attachments B.  In particular, the application seeks authority to execute

search warrants on Google for information pertaining to ███████ @gmail.com; on Facebook

for information pertaining to user Glen.cohen.12; and on Instagram for information pertaining to user glenecohen.

2. I am a Detective employed by the Connecticut State Police ("CSP") Western District Major Crime Squad and currently assigned to the FBI Violent Crime Task Force as a Task Force Officer. As such, I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code; that is, an officer empowered by law to conduct investigations of, and make arrests for, offenses enumerated in Section 2516 of Title 18. I have been employed by the CSP since May of 2010.

3. During my career, I have participated in a variety of cases and investigative matters including but not limited to those involving murder, assault, kidnapping, robbery, arson, narcotics trafficking, prostitution, threatening, and the unlawful possession of weapons. I have written, obtained and coordinated the execution of search and arrest warrants pertaining to individuals involved in the illegal activity of these investigations on a federal and state level, and I have also provided testimony, both in Federal and State court proceedings. I have obtained and executed search warrants for electronic evidence, such as email and social media accounts.

4. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. The statements contained in this affidavit are based on: (1) my personal participation in the investigation; (2) information provided by detectives and officers of the New Canaan Police Department and other law enforcement officers including other FBI agents; and (3) my experience and training, as well as other information.

5. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. 2261A (cyberstalking) have been

committed by Glen Elliott Cohen.  That section provides, in relevant part: "Whoever ... (2) with the intent to ... harass ... another person, uses the mail, any interactive computer service or electronic communication service or electronic communication system of interstate commerce, or any other facility of interstate or foreign commerce to engage in a course of conduct that ... (B) causes, attempts to cause, or would be reasonably expected to cause substantial emotional distress ... [commits a crime]."  The  maximum term of imprisonment for this type of violation is 5 years.

6.      There is also probable cause to search the information described in Attachments A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachments B.

### JURISDICTION

7.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court a district court of the United States that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

### PROBABLE CAUSE

8.

































## BACKGROUND CONCERNING EMAIL

45.     In my training and experience, I have learned that Google provides a variety of on-line services, including electronic mail ("email") access, to the public.  Google allows subscribers to obtain email accounts at the domain name gmail.com, like glencoxxx@gmail.com. Subscribers obtain an account by registering with Google.  During the registration process, Google asks subscribers to provide basic personal information.  Therefore, the computers of Google are likely to contain stored electronic communications (including retrieved and unretrieved email for Google subscribers) and information concerning subscribers and their use of Google services, such as account access information, email transaction information, and account application information.  In my training and experience, such information may constitute

19

evidence of the crimes under investigation because the information can be used to identify the account's user or users.

46.     In my training and experience, email providers generally ask their subscribers to provide certain personal identifying information when registering for an email account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative email addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and my experience, I know that even if subscribers insert false information to conceal their identity, I know that this information often provide clues to their identity, location or illicit activities.

47.     In my training and experience, email providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (i.e., session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, email providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the email account.

20

48.     In my training and experience, in some cases, email account users will communicate directly with an email service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. Email providers typically retain records about such communications, including records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

49.     As explained herein, information stored in connection with an email account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, the information stored in connection with an email account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, email communications, contacts lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the email provider can show how and when the account was accessed or used. For example, as described below, email providers typically log the Internet Protocol (IP) addresses from which users access the email account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the email account access and use relating to the crime under investigation. This geographic and timeline information may tend to either

21

inculpate or exculpate the account owner.  Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (e.g., location information integrated into an image or video sent via email).  Last, stored electronic data may provide relevant insight into the email account owner's state of mind as it relates to the offense under investigation. For example, information in the email account may indicate the owner's motive and intent to commit a crime (e.g., communications relating to the crime), or consciousness of guilt (e.g., deleting communications in an effort to conceal them from law enforcement).

50.     On 08/15/2018, a preservation request was sent to Google to preserve all information for ▇▇▇▇ @gmail.com that is still archived from January 1, 2015 to the present. In general, an email that is sent to a Gmail subscriber is stored in the subscriber's "mail box" on Google servers until the subscriber deletes the email.  If the subscriber does not delete the message, the message can remain on Google's servers indefinitely. Even if the subscriber deletes the email, it may continue to be available on Google's servers for a certain period of time.

## BACKGROUND CONCERNING FACEBOOK

51.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

52.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical

address (including city, state, and zip code), telephone numbers, screen names, websites, and

other personal identifiers.  Facebook also assigns a user identification number to each account.

53.     Facebook users may join one or more groups or networks to connect and interact

with other users who are members of the same group or network.  Facebook assigns a group

identification number to each group.  A Facebook user can also connect directly with individual

Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request"

accepts the request, then the two users will become "Friends" for purposes of Facebook and can

exchange communications or view information about each other.  Each Facebook user's account

includes a list of that user's "Friends" and a "News Feed," which highlights information about

the user's "Friends," such as profile changes, upcoming events, and birthdays.

54.     Facebook users can select different levels of privacy for the communications and

information associated with their Facebook accounts.  By adjusting these privacy settings, a

Facebook user can make information available only to himself or herself, to particular Facebook

users, or to anyone with access to the Internet, including people who are not Facebook users.  A

Facebook user can also create "lists" of Facebook friends to facilitate the application of these

privacy settings.  Facebook accounts also include other account settings that users can adjust to

control, for example, the types of notifications they receive from Facebook.

55.     Facebook users can create profiles that include photographs, lists of personal

interests, and other information.  Facebook users can also post "status" updates about their

whereabouts and actions, as well as links to videos, photographs, articles, and other items

available elsewhere on the Internet.  Facebook users can also post information about upcoming

"events," such as social occasions, by listing the event's time, location, host, and guest list.  In

addition, Facebook users can "check in" to particular locations or add their geographic locations

to their Facebook posts, thereby revealing their geographic locations at particular dates and times.  A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

56.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video.  It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video.  For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

57.     Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user.  Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.  In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account.  Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

58.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

59.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as

webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

60. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

61. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

62. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

63. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

64. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

65. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date),

the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number).  In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

66.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion.  In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account.  For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time.  Further, Facebook account activity can show how and when the account was accessed or used.  For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation.  Additionally, Facebook builds geo-location into some of its services.  Geo-

26

location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner.

67.     On August 9, 2018, I served Facebook with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the "Glen.cohen.12" account.

68.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

## BACKGROUND CONCERNING INSTAGRAM

69.     From my review of publicly available information provided by Instagram about its service, including Instagram's "Privacy Policy," I am aware of the following about Instagram and about the information collected and retained by Instagram.

70.     Instagram owns and operates a free-access social-networking website of the same name that can be accessed at http://www.instagram.com. Instagram allows its users to create their own profile pages, which can include a short biography, a photo of themselves, and other information. Users can access Instagram through the Instagram website or by using a special electronic application ("app") created by the company that allows users to access the service through a mobile device.

71.     Instagram permits users to post photos to their profiles on Instagram and otherwise share photos with others on Instagram, as well as certain other social-media services, including Flickr, Facebook, and Twitter. When posting or sharing a photo on Instagram, a user

can add to the photo: a caption; various "tags" that can be used to search for the photo (e.g., a user made add the tag #vw so that people interested in Volkswagen vehicles can search for and find the photo); location information; and other information.  A user can also apply a variety of "filters" or other visual effects that modify the look of the posted photos.  In addition, Instagram allows users to make comments on posted photos, including photos that the user posts or photos posted by other users of Instagram.  Users can also "like" photos.

72.     Upon creating an Instagram account, an Instagram user must create a unique Instagram username and an account password.  This information is collected and maintained by Instagram.

73.     Instagram asks users to provide basic identity and contact information upon registration and also allows users to provide additional identity information for their user profile. This information may include the user's full name, e-mail addresses, and phone numbers, as well as potentially other personal information provided directly by the user to Instagram.  Once an account is created, users may also adjust various privacy and account settings for the account on Instagram.  Instagram collects and maintains this information.

74.     Instagram allows users to have "friends," which are other individuals with whom the user can share information without making the information public.  Friends on Instagram may come from either contact lists maintained by the user, other third-party social media websites and information, or searches conducted by the user on Instagram profiles.  Instagram collects and maintains this information.

75.     Instagram also allows users to "follow" another user, which means that they receive updates about posts made by the other user.  Users may also "unfollow" users, that is, stop following them or block the, which prevents the blocked user from following that user.

28

76.     Instagram allow users to post and share various types of user content, including photos, videos, captions, comments, and other materials.  Instagram collects and maintains user content that users post to Instagram or share through Instagram.

77.     Instagram users may send photos and videos to select individuals or groups via Instagram Direct.  Information sent via Instagram Direct does not appear in a user's feed, search history, or profile.

78.     Users on Instagram may also search Instagram for other users or particular types of photos or other content.

79.     For each user, Instagram also collects and retains information, called "log file" information, every time a user requests access to Instagram, whether through a web page or through an app.  Among the log file information that Instagram's servers automatically record is the particular web requests, any Internet Protocol ("IP") address associated with the request, type of browser used, any referring/exit web pages and associated URLs, pages viewed, dates and times of access, and other information.

80.     Instagram also collects and maintains "cookies," which are small text files containing a string of numbers that are placed on a user's computer or mobile device and that allows Instagram to collect information about how a user uses Instagram.  For example, Instagram uses cookies to help users navigate between pages efficiently, to remember preferences, and to ensure advertisements are relevant to a user's interests.

81.     Instagram also collects information on the particular devices used to access Instagram.  In particular, Instagram may record "device identifiers," which includes data files and other information that may identify the particular electronic device that was used to access Instagram.

82.     Instagram also collects other data associated with user content.  For example, Instagram collects any "hashtags" associated with user content (i.e., keywords used), "geotags" that mark the location of a photo and which may include latitude and longitude information, comments on photos, and other information.

83.     Instagram also may communicate with the user, by email or otherwise.  Instagram collects and maintains copies of communications between Instagram and the user.

84.     On August 9, 2018, I served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Instagram to preserve all information associated with the "glenecohen" account.

85.     In my training and experience, an Instagram user's account activity, IP log, stored electronic communications, and other data retained by Instagram, can indicate who has used or controlled the Instagram account.  For example, profile contact information, direct messaging logs, shared photos and videos, and captions (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the Instagram account at a relevant time.  Further, Instagram account activity can show how and when the account was accessed or used.  For example, as described herein, Instagram logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date.  By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation.  Such information allows investigators to understand the geographic and chronological context of Instagram access, use, and events relating to the crime under investigation.  Additionally, Instagram builds geo-location into some of its services.  Geo-location allows, for example, users to "tag" their location in posts and Instagram "friends" to

locate each other.  This geographic and timeline information may tend to either inculpate or exculpate the Instagram account owner.

86.     Based on the information above, the computers of Instagram are likely to contain all the material described above with respect to the glenecohen account, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, which would include information such as the IP addresses and devices used to access the account, as well as other account information that might be used to identify the actual user or users of the account at particular times.

## CONCLUSION

87.     Based on the foregoing, I request that the Court issue the proposed search warrants to Google, Facebook, and Instagram.  Because the warrants will be served on these companies, which will then compile the requested records at a time convenient to them, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

KYLE BOMBACE
Task Force Officer
Federal Bureau of Investigation

Subscribed and sworn to before me on August 23, 2018.

/s/ Sarah A. L. Merriam, USMJ

Honorable SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE

31

## ATTACHMENT A

### Property to Be Searched - Google

This warrant applies to information associated with ▓▓▓▓▓ @gmail.com that is stored at premises owned, maintained, controlled, or operated by Google, a company headquartered in Mountain View, California.

## ATTACHMENT B

### Particular Things to be Seized - Google

**I.        Information to be disclosed by Google (the "Provider")**

To the extent that the information described in Attachment A – Google is within the possession, custody, or control of the Provider, including any emails, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 9, 2018, the Provider is required to disclose the following information to the government for each account or identifier listed in Attachment A - Google for the period between July 30, 2018, and August 17, 2018:

a.        The contents of all emails associated with the account, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email;

b.        All records or other information regarding the identification of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

c.        The types of service utilized;

d.        All records pertaining to communications between the Provider and any person regarding the account, including contacts with support services and records of actions taken.

2

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2261A, those violations involving Glen Cohen and occurring between July 30, 2018, and August 17, 2018, including, for each account or identifier listed on Attachment A - Google, information pertaining to the following matters:



3

## ATTACHMENT A

### Property to Be Searched – Facebook

This warrant applies to information associated with user Glen.cohen.12/Facebook User ID # 100005427003369 that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized - Facebook**

I.      **Information to be disclosed by Facebook (the "Provider")**

To the extent that the information described in Attachment A - Facebook is within the

possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such

information is located within or outside of the United States, including any messages, records,

files, logs, or information that have been deleted but are still available to Facebook, or have been

preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 9, 2018, Facebook is

required to disclose the following information to the government for each user ID listed in

Attachment A - Facebook:

(a)     All contact and personal identifying information, including full name, user

identification number, birth date, gender, contact e-mail addresses, physical

address (including city, state, and zip code), telephone numbers, screen names,

websites, and other personal identifiers.

(b)     All activity logs for the account and all other documents showing the user's posts

and other Facebook activities between March 26, 2015, and August 17, 2018;

(c)     All photos and videos uploaded by that user ID and all photos and videos

uploaded by any user that have that user tagged in them between March 26, 2015,

and August 17, 2018, including Exchangeable Image File ("EXIF") data and any

other metadata associated with those photos and videos;

(d)     All profile information; News Feed information; status updates; videos,

photographs, articles, and other items; Notes; Wall postings; friend lists, including

the friends' Facebook user identification numbers; groups and networks of which

5

the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)   All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f)   All other records and contents of communications and messages made or received by the user between March 26, 2015, and August 17, 2018, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g)   All "check ins" and other location information;

(h)   All IP logs, including all records of the IP addresses that logged into the account;

(i)   All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(j)   All information about the Facebook pages that the account is or was a "fan" of;

(k)   All past and present lists of friends created by the account;

(l)   All records of Facebook searches performed by the account between March 26, 2015, and August 17, 2018;

(m)   All information about the user's access and use of Facebook Marketplace;

(n)   The types of service utilized by the user;

(o)   The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(p)   All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(q)   All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within fourteen days of service of this warrant.

## II.   Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2261A, those violations involving Glen Cohen and occurring between March 26, 2015, and August 17, 2018, including, for each account or identifier listed on Attachment A - Facebook, information pertaining to the following matters:



(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

## ATTACHMENT A

### Property to Be Searched - Instagram

This warrant applies to information associated with user glenecohen that is stored at premises owned, maintained, controlled, or operated by Instagram, a company owned by Facebook, Inc. and headquartered in San Francisco, California.

## ATTACHMENT B

### Particular Things to be Seized - Instagram

**I.    Information to be disclosed by Instagram, LLC**

To the extent that the information described in Attachment A - Instagram is within the possession, custody, or control of Instagram, LLC, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, LLC, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on August 9, 2018, Instagram, LLC is required to disclose the following information to the government for each account listed in Attachment A - Instagram:

    (a)    All identity and contact information, including full name, e-mail address, physical address (including city, state, and zip code), date of birth, phone numbers, gender, hometown, occupation, and other personal identifiers;

    (b)    All past and current usernames associated with the account;

    (c)    The dates and times at which the account and profile were created, and the Internet Protocol ("IP") address at the time of sign-up;

    (d)    All activity logs including IP logs and other documents showing the IP address, date, and time of each login to the account, as well as any other log file information;

    (e)    All information regarding the particular device or devices used to login to or access the account, including all device identifier information or cookie information, including all information about the particular device or devices used to access the account and the date and time of those accesses;

    (f)    All data and information associated with the profile page, including photographs, "bios," and profile backgrounds and themes;

    (g)    All communications or other messages sent or received by the account between April 20, 2018, and August 17, 2018;

    (h)    All user content created, uploaded, or shared by the account, including any comments made by the account on photographs or other content between April 20, 2018, and August 17, 2018;

(i)     All photographs and images in the user gallery for the account between April 20, 2018, and August 17, 2018;

(j)     All location data associated with the account, including geotags between April 20, 2018, and August 17, 2018;

(k)     All data and information that has been deleted by the user between April 20, 2018, and August 17, 2018;

(l)     A list of all of the people that the user follows on Instagram and all people who are following the user (*i.e.*, the user's "following" list and "followers" list), as well as any friends of the user;

(m)     A list of all users that the account has "unfollowed" or blocked;

(n)     All privacy and account settings;

(o)     All records of Instagram searches performed by the account, including all past searches saved by the account between April 20, 2018, and August 17, 2018;

(p)     All information about connections between the account and third-party websites and applications; and,

(q)     All records pertaining to communications between Instagram, LLC and any person regarding the user or the user's Instagram account, including contacts with support services, and all records of actions taken, including suspensions of the account.

## II.    Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2261A, those violations involving Glen Cohen and occurring between April 20, 2018, and August 17, 2018, including, for each account or identifier listed on Attachment A - Instagram, information pertaining to the following matters:



2

(d) Evidence indicating how and when the Facebook account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

(e) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).